## HIGGINS MANUFACTURING CO v HINIG et

Ohio Appeals, 8th Dist, Cuyahoga Co
No 10290. Decided Jan 20, 1930

Messrs. Frank & Graeff for Higgins Mfg. Co.

Mooney, Hahn, Loeser, Keough & Beam, Cleveland for Hinig et.

**VICKERY, PJ.**

That the Higgins Manufacturing Company did go back and do something about the weather stripping and fixed the screens may be true, and it is perhaps true that the owner asked them to come back. But does that show that this was a part of the original contract? Can any house that has been occupied for a period of eighteen months; a new house, escape the ravages of time in settling, and so forth, so that it may not be necessary to readjust the weather stripping, the screens, doors and window sashes? If the weather stripping was out of place, even though it had been perfect when it was put in and everything was completed, as the evidence shows it was in this case, is it incredible to think that the owner in such a case, knowing who had put in the weather stripping and screens, should call upon the same man to readjust them. Can it be possible that that could be called a part of the original contract?

Now it must be remembered that there there was no contractual relation between The Higgins Manufacturing Company and the owners of this property. They were simply subcontractors of the general contractor Hinig and Hinig had adjusted and settled with them and had given them a promissory note and had renewed it many times and then, unfortunately for The Higgins Manufacturing Company and perhaps for others, Hinig failed and went into bankruptcy; and then eighteen months after this house had been accepted and the architect had certified that it was completed and had turned it over to the owners, then because they could not get their money from Hinig, they then go back and do a couple hours of work upon which they try to base a lien and compel the owner who has honestly and fairly paid the contractor to again pay the sum of $1100 when the subcontractor apparently trusted his employer, the contractor, fully and entirely; and only after he could not recover from the contractor, he seeks to do a little work on the property to keep his lien alive. If such a condition of things were permitted to exist, no matter how careful the owners of property might be, they could never escape paying for work done and material furnished on property twice or oftener. If this subcontractor could do that sort of thing, every other subcontractor could do it, and even though there had been no attention paid by the subcontractors they could, by going back on some trivial pretext or another,—if the

door had sagged, or the weather stripping had got out of order, put it back into place,—revive a lien they might have had, had they taken proper steps.

Now this is in a court of equity and if any persons were ever guilty of laches this record shows the Manufacturing Company was guilty of laches in this case, but the truth of it is they, as they had been dealing with Hinig for a long period of time, had regarded him as perfectly solvent, and one of those unfortunate circumstances occurred that has ruined many builders and contractors such as a slump in the value and sales of property and the inability of people to buy and pay for real property and the building thereon.

Now it is singular in this case that the Higgins Manufacturing Company had done like work on three or four other big jobs that Hinig had done for other persons and at just about the same time this same man who put in two hours work upon this place, went around to these various other places and did a couple hours of work on each. It looks as though it was done for the purpose of recovering against the owners of the various properties something that they had failed to collect from the contractor with whom they had their contract. The lien law though to protect subcontractors and furnishers of materials, must be strictly complied with, for the whole mechanic's lien law is in derogation of the contractual rights that the owners of property had under the common law. Under the common law there would be no claim whatever by the materialman against an owner of property who had made a contract with the principal contractor, and it is only by virtue of the statute that he can have any claim and it being in derogation of common law, must be strictly construed.

We do not put much faith in the arguments of the defendant in this action about the affidavit that was filed in this case. We think it substantially complies with the law, but we do think that the evidence clearly shows that all this work that was done, if it was done at all, was done as repair work and not as a part of the original contract. That work had been completed; it had been so stated by the parties and the general contractor. A bill had been rendered by them to the general contractor who had given his notes to pay for it and whatever work was done was simply repairing things which will get out of order around any new home,—or old home either for that matter,—and the wonder is if one can find any house that has been built for eighteen months and occupied where windows and doors or something do not need adjusting, and merely because the owner called in the party who put them up does not extend the life of the old contract and make it a part of the original contract. It was simply adjusting and repairing and we think that is all the evidence shows in this case.

We, therefore, think that the plaintiff was not entitled to maintain a lien against the property of the defendants and a decree may be drawn for the defendants. O. S. J.

Levine, J., concurs. Sullivan, J., not participating.